UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LISA A. D.,                          )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )        No. 1:21-cv-00123-DLP-JMS
                                     )
KILOLO KIJAKAZI,                     )
                                     )
                    Defendant.       )

## ORDER

Plaintiff Lisa A. D. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 423(d). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings.

## I. PROCEDURAL HISTORY

On May 22, 2018, Lisa filed an application for Title XVI SSI. (Dkt. 12-2 at 16, R. 15). Lisa's application alleged disability resulting from chronic obstructive pulmonary disease; emphysema; back and leg issues; a removed spleen; a collapsed lung; and anxiety. (Dkt. 12-6 at 5, R. 161). The Social Security Administration ("SSA") denied Lisa's claim initially on November 29, 2018, (Dkt. 12-3 at 2, R. 55), and on reconsideration on March 27, 2019. (Id. at 14, R. 67). On May 2, 2019, Lisa filed a written request for a hearing, which was granted. (Dkt. 12-4 at 16, R. 95). On

July 21, 2020, Administrative Law Judge ("ALJ") Gladys Whitfield conducted a hearing, where Lisa, her counsel, and vocational expert, Deana Olah[1], all appeared telephonically. (Dkt. 12-2 at 34, R. 33). On August 5, 2020, ALJ Whitfield issued an unfavorable decision finding that Lisa was not disabled. (Dkt. 12-2 at 16-26, R. 15-25). Lisa appealed the ALJ's decision on August 28, 2020, and, on November 17, 2020, the Appeals Council denied Lisa's request for review, making the ALJ's decision final. (Dkt. 12-4 at 63-65, R. 142-44; Dkt. 12-2 at 2-4, R. 1-3). Lisa now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these

---

[1] The hearing transcript indicates the vocational expert's name is Tina Olah, but her resume says Deana Olah. (Dkt. 12-2 at 33, R. 32; Dkt. 12-6 at 52, R. 208). The hearing transcript appears to be a rough draft version rather than a final copy. (Dkt. 12-2 at 31-55, R. 30-54).

statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920. (A negative answer at any point, other than step three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine

whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Lisa is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III. BACKGROUND

#### A. Factual Background

Lisa was forty-nine years old on the date her application was filed. (Dkt. 12-2 at 36, R. 35). She has a high school education. (Dkt. 12-2 at 46, R. 45). She has past relevant work history as a cleaner. (Id. at 24, R. 23).

#### B. ALJ Decision

In determining whether Lisa qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Lisa was not disabled. (Dkt. 12-2 at 16-26, R. 15-25). At Step One, the ALJ found that Lisa had not engaged in substantial gainful activity since her application date of May 22, 2018. (Id. at 18, R. 17).

At Step Two, the ALJ found that Lisa has severe impairments of chronic obstructive pulmonary disease; depression; anxiety; and a personality disorder, as well as nonsevere impairments of alcohol use disorder; allergic rhinitis; and mental retardation. (Dkt. 12-2 at 18-19, R. 17-18).

At Step Three, the ALJ found that Lisa's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 416.920(d), 416.925, and 416.926, considering Listings 3.02, 5.08, 12.04, 12.06, and 12.08. (Dkt. 12-2 at 19-21, R. 18-20). As to the "paragraph B" criteria, the ALJ concluded that Lisa had mild limitations in understanding, remembering or applying information; interacting with others; and adapting or managing oneself and moderate limitations in concentrating, persisting, or maintaining pace. (Id.).

6

After Step Three but before Step Four, the ALJ found that Lisa had the residual functional capacity ("RFC") to perform "light work," as defined in 20 C.F.R. § 416.967(b), with the following limitations: never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; occasionally reach overhead; not more than occasional exposure to extreme heat and cold, humidity, environmental irritants, and poorly ventilated areas; avoid all use of hazardous moving machinery and avoid all exposure to unprotected heights; no complex written or verbal communications; no complex decision making; limited to simple, routine, repetitive tasks, that is short cycle work, where the same routine tasks are performed over and over again according to set procedures, sequence, or pace with little opportunity for diversion or interruption; no tandem tasks or team work; no fast-paced or assembly line production requirements; occasional superficial interaction with co-workers, supervisors, and general public; no more than occasional routine workplace changes; can tolerate normal supervisory interactions including performing appraisals, corrections, instructions, and directives as necessary; can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work; and can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work. (Dkt. 12-2 at 21, R. 20).

At Step Four, the ALJ concluded that Lisa is able to perform her past relevant work as a cleaner. (Dkt. 12-2 at 24, R. 23).  In the alternative, the ALJ concluded that there were jobs that exist in significant numbers that Lisa could perform, such as mail sorter, cafeteria attendant, storage rental clerk, sorter, addressing clerk, and

table worker. (Id. at 25-26, R. 24-25). The ALJ thus concluded that Lisa was not disabled. (Id. at 26, R. 25).

## IV.   ANALYSIS

The Plaintiff challenges the ALJ's decision on several grounds. First, the Plaintiff argues that the ALJ erred at Step Three of the five-step analysis by providing no explanation as to why her COPD did not meet Listing 3.02. (Dkt. 14 at 14-17)[2]. Second, the Plaintiff argues that the ALJ conducted a faulty SSR 16-3p analysis. (Id. at 18-26). Third, Lisa maintains that the ALJ's RFC analysis was perfunctory, omitted key information, and mischaracterized important medical evidence. (Id. at 27-33).

### A.  Step Three Analysis

First, Lisa argues that the ALJ erred by providing no analysis as to whether her COPD met or medically equaled Listing 3.02. (Dkt. 14 at 14-17). The Commissioner argues that the Plaintiff has not met Listing 3.02 because the spirometry test results do not reflect that her FEV1 score of 1.14 was one of "at least three expiratory maneuvers during the same test session." (Dkt. 15 at 8). Any error was harmless, the Commissioner adds, because Plaintiff cannot prove that she meets any aspect of Listing 3.02. (Id. at 8-9).

"Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of

---

[2] The paginated numbers provided at the bottom of Plaintiff's Opening Brief do not correspond with the paginated numbers of the brief on the Docket. The Undersigned has chosen to cite to the paginated numbers from the Docket.

Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20

C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1). The burden of proof at Step

Three resides with the claimant. *Eskew v. Astrue,* 462 F. App'x 613, 616 (7th Cir.

2011). During a pulmonary function test, a "spirograph" or "spirometry" is used to

measure a person's forced expiratory volume[3] in one second (FEV1), and

measurements are taken both before and after the person inhales a bronchodilator.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.00E. Spirometry involves at least three forced

expiratory maneuvers during the same test session. *Id*. If a person with COPD has an

FEV1 at a particular value, the person automatically qualifies for benefits. 20 C.F.R.

Pt. 404, Subpt. P, App.1, 3.02A. For a female over the age of 20 between 60.25 and

62.25 inches tall, Listing 3.02 requires an FEV1 of less than or equal to 1.15. *Id*. An

ALJ is entitled to rely on the opinions of state agency physicians in determining that

a claimant's impairments do not equal a listing, but she must still confront significant

evidence that conflicts with this decision. *Johnson v. Astrue*, No. 2:11-CV-260 JD,

2012 WL 4471607, at *8 (N.D. Ind. Sept. 26, 2012) (citations omitted).

The ALJ's opinion states, in relevant part: the "claimant's impairments fail to

meet or medically equal Listing 3.02," "the claimant's impairments fail to satisfy any

of the subparagraphs," and "[s]ubparagraph 3.02(A) is not satisfied because there is

no evidence of an FEV1 value less than or equal to the relevant values in Table I-A or

I-B." (Dkt. 12-2 at 19, R. 18). On May 17, 2018, Plaintiff underwent pulmonary

---

[3] This test requires the subject to take in a full, deep breath and then exhale as forceful as possible. This effort is called a forced expiratory maneuver. The FEV1 value is the volume of air exhaled during the first second of a forced expiratory maneuver. Respiratory Health Spirometry Procedures Manual, *Centers for Disease Control and Prevention*, 1-6-1-7).

function testing, and various results are listed from spirometry, lung volume, and diffusion testing. (Dkt. 12-7 at 76-78, R. 286-88). Plaintiff argues that because her FEV1 score was 1.14, she meets the Listing's requirements of an FEV1 below 1.15 and should be found disabled. (Dkt. 14 at 14-17). The Commissioner argues that only one maneuver took place for the spirometry testing because only one set of results is listed. (Dkt. 15 at 8-9). The Court acknowledges that only one set of results is listed for each of the three types of testing conducted on May 17, 2018 – spirometry, lung volume, and diffusion – but nevertheless concludes that some ambiguity exists. (Dkt. 12-7 at 76-78, R. 286-88). There is no way for the Court to determine how many maneuvers took place for the spirometry testing because only one graph appears, but the doctor indicated that the spirometry results were acceptable and reproducible. (Id.). Additionally, the comments section of the test states that three attempts were made on the DLCO testing, yet only one result is listed for that test as well. The same could hold true for the spirometry testing conducted that day, but there is no way for the Court to determine how many maneuvers actually took place. Regardless, the Undersigned is not a medical expert, and the interpretation of pulmonary function testing should be left to the Agency and its medical experts.

Here, the ALJ found that "there was no evidence of an FEV1 value less than or equal" to the values listed in the appendix. (Dkt. 12-2 at 19, R. 18). The Commissioner, however, maintains that the ALJ found that there was no evidence of an "acceptable" FEV1 value less than or equal to the relevant values. (Dkt. 15 at 7-8). The Court's review is limited to the reason articulated in the ALJ's decision, and post-hoc

rationalizations submitted by the Commissioner are impermissible. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (attempts to bolster ALJ's position with post-hoc rationale are impermissible); *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."); *Villano v. Astrue*, No. 2:07 CV 187, 2009 WL 1803131, at *3 (N.D. Ind. June 23, 2009) (Commissioner's position limited to the ALJ's written decision, especially with respect to the required bridge between facts and conclusions, thus prohibiting post-hoc rationalization). Here, the ALJ states that there was "no evidence" to meet Listing 3.02, rather than that there was no "acceptable" evidence to meet the listing. This distinction is vital because, in this case, the ALJ never mentions the results of the May 2018 that ostensibly show an FEV1 value that meets the Listing requirement, either during Step Three or during her recitation of the medical evidence in the RFC section. (Dkt. 12-2 at 19-24, R. 18-23). Instead, the ALJ only mentions the portion of the May report that states Plaintiff demonstrated a "moderate to severe obstructive ventilator defect." (Dkt. 12-2 at 22, R. 21).

Nor can it be said that the ALJ explicitly relied on the opinions of the state agency physicians to conclude that Listing 3.02 was not met, since she included no reference to said opinions at Step Three. *See Johnson v. Astrue*, No. 2:11-cv-260 JD, 2012 WL 4471607, at *8 (N.D. Ind. Sept. 26, 2012) (ALJ did not err by identifying listing at issue and then pointing to the state agency physicians' opinion that listing was not met or equaled, but did err by not addressing conflicting medical

11

information). Perhaps more importantly, it is unclear whether the state agency physicians actually considered Plaintiff's May 2018 pulmonary function test results, because the entirety of their consideration is as follows: "05/17/18 PFS." (Dkt. 12-3 at 21, 24, R. 74, 77).

This Court's task is simply to determine whether the ALJ confronted the evidence that possibly meets Listing 3.02 and, if she did, whether she adequately explained why she rejected it. *Royer v. Berryhill*, No. 3:17-cv-965-JD, 2019 WL 1349802, at *3 (N.D. Ind. Mar. 25, 2019). As it stands, the Plaintiff has presented medical evidence that could satisfy the requirements of Listing 3.02, but it is not at all clear whether the state agency physicians or the ALJ actually considered that evidence. Moreover, the ALJ provides no explanation in her opinion as to why the May 2018 pulmonary function test results were rejected. *See McDowell v. Colvin*, No. 3:12-CV-723-JD, 2014 WL 1094905, at *12 (N.D. Ind. Mar. 18, 2014) (ALJ committed reversible error by failing to provide a sufficient Listing 3.02 analysis where there was conflicting evidence about whether the listing was met). Without such an explanation, no logical bridge exists, and this matter must be remanded for further consideration of Plaintiff's May 2018 pulmonary testing.

## B. Subjective Symptom Analysis

Next, Plaintiff asserts that the ALJ erred during her 16-3p evaluation of Plaintiff's subjective symptoms. (Dkt. 14 at 18-26). Specifically, Plaintiff contends that the ALJ overstated her ability to perform activities of daily living and failed to acknowledge the significant limitations that Plaintiff faces when trying to perform

those activities. (Id. at 21-22). Additionally, Plaintiff notes that the ALJ cited to three medical exams to support her conclusion that Plaintiff's exams frequently showed normal breathing signs – these citations, Plaintiff argues, are a cherry-picked version of the facts regarding Plaintiff's ability to breathe. (Id. at 20-21). Finally, Plaintiff alleges that the ALJ erred by deeming her treatment conservative without further explanation. (Id. at 22-24).

The ALJ's 16-3p analysis is as follows[4]:

However, after careful consideration of the evidence, the undersigned finds that although the claimant's medically determinable impairments could reasonably be expected to cause some of the symptoms of the types alleged, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence for the reasons explained in this decision.

The record fails to fully substantiate the allegations of disabling symptoms. Although the claimant has been diagnosed with COPD, exams frequently showed respirations are non-labored, breath sounds are equal, symmetrical chest wall expansion, no chest wall tenderness, no retractions or use of accessory muscles, and no crackles, wheezes, or rubs (2F/8, 3F/5, 10F/21-22).

Therefore, the objective physical record does not support the severity of alleged disabling symptoms and instead supports a finding that the claimant remains capable of performing a range of light work within the restrictions set forth herein. . . .

The claimant's admitted activities of daily living also suggest the claimant is not as limited as alleged and remains capable of performing work within the restrictions set forth herein. For example, she reported being capable of preparing meals, performing housework, cleaning, doing laundry, watching television, driving, and shopping despite her symptoms (3E/3-5).

Thus, the claimant's receipt of conservative treatment, rather good objective diagnostic imaging and physical/mental status examination

---

[4] Plaintiff does not appear to challenge the ALJ's RFC analysis related to her mental health, so the Court only addresses the ALJ's analysis related to physical symptoms here.

> findings, as well as admitted activities of daily living all suggest that the
> claimant's impairments are not as severe as she alleged, and instead
> supports a conclusion that she remains capable of performing work
> within the restrictions set forth herein.

(Dkt. 12-2 at 22-23, R. 21-22).

"In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p

and articulate the reasons for the credibility determination." *Karen A. R. v. Saul*, No.

1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019). SSR 16-3p

describes a two-step process for evaluating a claimant's subjective symptoms.[5] First,

the ALJ must determine whether the claimant has a medically determinable

impairment that could reasonably be expected to produce the individual's alleged

symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must

evaluate the intensity and persistence of a claimant's symptoms, such as pain, and

determine the extent to which they limit his ability to perform work-related

activities. *Id.* at *3-4.

A court will overturn an ALJ's evaluation of a claimant's subjective symptom

allegations only if it is "patently wrong." *Burmester*, 920 F.3d at 510 (internal

quotation marks and citation omitted). To satisfy this standard, the ALJ must justify

his subjective symptom evaluation with "specific reasons supported by the record,"

*Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical

---

[5] SSR 16-3p became effective on March 28, 2016, (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *13, replacing SSR 96-7p, and requires an ALJ to assess a claimant's subjective symptoms rather than assessing his "credibility." By eliminating the term "credibility," the SSA makes clear that the "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1. The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges are not in the business of impeaching a claimant's character." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

14

bridge between the evidence and conclusion." *Villano,* 556 F.3d at 562. An ALJ's evaluation is "patently wrong" and subject to remand when the ALJ's finding lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Cassandra S. v. Berryhill*, No. 18-00328, 2019 WL 1055097, at \*5 (S.D. Ind. Mar. 6, 2019).

At step two of the Rule 16-3p analysis, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 404.1529(c)(3).  Although the Court will defer to an ALJ's subjective symptom finding that is not patently wrong, the ALJ must still adequately explain his subjective symptom evaluation "by discussing specific reasons supported by the record." *Pepper*, 712 F.3d at 367. Without this discussion, the Court is unable to determine whether the ALJ reached her decision in a rational manner, logically based on her specific findings and the evidence in the record. *Murphy*, 759 F.3d at 816 (internal quotations omitted); *see also* SSR 16-3p, at \*9.

When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individuals own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at \*8. The ruling

also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id*. at *9.

Plaintiff contends that the ALJ misrepresented her activities of daily living and failed to consider the limitations imposed by her medical conditions. (Dkt. 14 at 21-22). First, as Plaintiff correctly notes, the ALJ's citation to the "claimant's admitted activities of daily living" is a citation to a third-party function report filled out by Plaintiff's mother, not by Plaintiff. (Dkt. 12-6 at 13, R. 169). Thus, it cannot be said that the Plaintiff admitted to being able to perform these activities as listed. Second, the ALJ appears to have presented a limited and skewed version of the activities Plaintiff's mother indicated that Lisa could perform. For example, although Plaintiff's mother stated that Lisa can prepare her own meals, she does so less frequently now because she is always tired and she only uses the microwave or makes sandwiches. (Dkt. 12-6 at 15, R. 171). Although the ALJ stated that Plaintiff can perform housework, cleaning, and do laundry, Plaintiff's mother stated that Lisa "only cleans what she has to clean," needs reminders to do her laundry at most once per week, does not have to do housework, and cannot do yard work because of her breathing problems. (Dkt. 12-6 at 15-16, R. 171-72). Although the ALJ stated that Plaintiff watches television, Lisa's mother stated that Plaintiff watches television less frequently than she used to because she is always tired or not feeling well. (Dkt. 12-6

at 17, R. 173). Finally, the ALJ stated that Plaintiff is capable of shopping, but Plaintiff's mother stated that Plaintiff does not shop due to having no income. (Dkt. 12-6 at 16, R. 172).

As for Plaintiff's own statements, she told the psychological consultative examiner that she "has been taking care of her hygiene and helping out in the house when she feels that she can as far as her medical problems and shortness of breath." (Dkt. 12-7 at 31, R. 241). She further stated that she "can do dishes, a little cleaning, or cooking, but avoiding anything with chemicals." (Id.). At the hearing, she testified that she left her last job because of her breathing issues, because she took too long to complete the tasks and could not finish the job. (Dkt. 12-2 at 40, 42, R. 39, 41). Plaintiff further testified that she can stand for fifteen minutes before she needs to sit down to take a break. (Dkt. 12-2 at 46, R. 45).

Even if the Court were to accept the ALJ's conclusion that Plaintiff's mother's statement regarding Plaintiff's activities aligns with the Plaintiff's actual claimed activities, the ALJ's findings still fail to explain how Lisa's activities of daily living are inconsistent with her symptoms. *Sam K. v. Saul*, 391 F. Supp. 3d 874, 881 (N.D. Ill. 2019) (ALJ erred by listing activities of daily living but failing to explain how those activities were inconsistent with Plaintiff's claimed symptoms). Additionally, despite multiple mentions from Plaintiff and her mother, it does not appear the ALJ considered how Plaintiff's breathing problems and fatigue interfered with her daily activities. *Clark v. Saul*, 421 F. Supp. 3d 628, 633 (N.D. Ind. 2019) (ALJ erred when not considering how fatigue affected daily activities, especially where claimant had

17

more flexibility to complete activities as compared with full-time work); *see also RuthAnn G. v. Saul*, No. 2:20-cv-252, 2021 WL 2349671, at *9 (N.D. Ind. June 9, 2021) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (an ALJ must take into consideration that, when performing activities of daily living, claimant can obtain as much help from others as needed, work at her own pace depending on symptoms, and take as many breaks between activities for as long as needed, and that employers generally do not permit such flexibility)). The ALJ's selective, and at times inaccurate, version of the Plaintiff's activities of daily living does not assure this Court that the ALJ provided an adequate logical bridge from the evidence of Plaintiff's daily activities to the conclusion that Plaintiff is not as limited as alleged.

Next, Plaintiff argues that the ALJ erred by citing to three selective notations from the record to support her conclusion that Plaintiff had normal pulmonary examinations. (Dkt. 14 at 20-21). The ALJ conclusively states that Plaintiff's normal examinations indicate that her symptoms are not substantiated by the record. (Dkt. 12-2 at 22-23, R. 21-22). The Court notes, however, that at these medical appointments, Plaintiff's treating physician never indicates that these examinations suggest her symptoms are exaggerated, and her physician continues to treat her symptoms as alleged. Moreover, during those same examinations cited by the ALJ, Plaintiff also demonstrated decreased breath sounds[6]. (Dkt. 12-7 at 21, 73, R. 231,

---

[6] Decreased or diminished breath sounds indicated that less air movement is heard when listening to the lungs. This may be normal in the advanced stages of COPD, or may be heard during asthma attacks or COPD flare-ups. *COPD Lexicon: Lung Sound Terms to Know*, The Terminology Behind Lung Sounds with COPD & What They Mean (last visited May 1, 2022).

283). On remand, the ALJ should give full consideration to whether Plaintiff's symptoms are supported by the medical evidence of record.

The Plaintiff also argues that the ALJ's reference to her "conservative treatment" was improper. (Dkt. 14 at 22-24). Since the Court is already remanding for further consideration of Plaintiff's subjective symptoms, on remand the ALJ should be sure to consider factors that may have prevented Plaintiff from seeking or receiving medical care, such as economic or insurance constraints.

### C. RFC Analysis

Next, Plaintiff contends that the ALJ erred by not mentioning her left hip osteoarthritis in the opinion and not including any functional limitations in the RFC. (Dkt. 14 at 28-29). As the Commissioner points out, however, the ALJ did not find Lisa's left hip osteoarthritis to be a medically determinable impairment. (Dkt. 15 at 17). As the Agency's own guidance makes clear, the RFC must only include limitations and restrictions attributable to medically determinable impairments. Social Security Ruling 96-8p 1996 WL 374184, at *2 (S.S.A. July 2, 1996).

Here, Plaintiff makes little to no argument that osteoarthritis should be considered a medically determinable impairment. The Seventh Circuit has held in a social security disability context that "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)). Thus, the Court deems this argument waived.

Plaintiff also argues that the ALJ erred by not fully explaining the rationale behind her RFC finding, particularly with respect to the ability to engage in the walking required of light work and exposure to cleaning agents. (Dkt. 14 at 27-28). In the previous sections, the Undersigned already addressed the ALJ's Listing analysis and consideration of Plaintiff's subjective complaints and found both to be lacking. Without a proper Step Three or RFC analysis, the Court cannot determine whether the RFC was similarly lacking. Accordingly, the Court declines to evaluate the RFC analysis as to Plaintiff's ability to walk or be exposed to cleaning agents at this time.

Finally, Plaintiff argues that the ALJ committed reversible error by concluding that she could return to her past work as a cleaner. (Dkt. 14 at 31-33). Specifically, Plaintiff contends that the record shows that she had to leave her past position as a cleaner due to the cleaning chemicals and solutions and that she would be unable to continue working as a cleaner, because common sense indicates that a cleaner would be responsible for using both such materials despite the Dictionary of Occupational Titles stating that cleaners have no exposure to environmental irritants. (Id.). The Commissioner maintains that the ALJ found Lisa capable of performing the work as generally performed and as actually performed and that, more importantly, the ALJ found in the alternative that Lisa could perform other work in the national economy. (Dkt. 15 at 19-20). The Court finds the Commissioner's argument persuasive. Even if the Plaintiff could demonstrate that it was harmful to find her capable of performing her past relevant work as a cleaner, the ALJ also provided six other jobs in the

national economy that Lisa would be able to perform. Thus, no error could have occurred and remand is not warranted on this issue.

## V. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date: 7/19/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.